UNITED STATES DISTRICT COURT
WESTERN DIVISION OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| WHITNEY BANK | CIVIL ACTION NO. 6:16-cv-01427 |
| VERSUS | MAGISTRATE JUDGE HANNA |
| SMI COMPANIES GLOBAL, INC. AND VAUGHN S. LANE | BY CONSENT OF THE PARTIES |

## **MEMORANDUM RULING**

Currently pending is the motion for summary judgment (Rec. Doc. 46), which was filed by the plaintiff, Whitney Bank. The motion is opposed, and oral argument was heard on May 31, 2018. Considering the evidence, the law, and the arguments of the parties, and for the reasons fully explained below, the motion is DENIED.

## **Background**

In this commercial dispute, Whitney Bank is seeking to collect amounts allegedly owed by the defendants pursuant to two promissory notes executed by SMI Companies Global, Inc. and guaranteed by SMI's director, officer, and shareholder, Vaughn S. Lane. The bank is also seeking recognition of the enforceability of the bank's security interest in SMI's accounts receivables. The defendants asserted affirmative defenses and counterclaims against the bank.

It is undisputed that the bank entered into two agreements with the defendants, by which the bank loaned money to SMI and the loans were guaranteed by Mr. Lane.

On December 12, 2012, SMI executed a promissory note in favor of Whitney Bank in the principal amount of $1 million along with a commercial security agreement. The loan agreement was perfected by the filing of a UCC financing statement. On December 5, 2013, the note was renewed as evidenced by a promissory note dated December 5, 2013 in the principal amount of $1 million. On August 12, 2014, the bank increased the amount of the loan as evidenced by a promissory note dated August 12, 2014 in the principal amount of $1.5 million. On that same date, SMI executed a commercial security agreement. On June 22, 2015, the August 2014 note was renewed as evidenced by a promissory note dated June 22, 2015 in the principal amount of $1.5 million. This note had a maturity date of July 31, 2016. This loan is sometimes referred to in the parties' briefing as "Loan 1" or "Line 1."

On April 3, 2015, Whitney Bank and SMI entered into a Business Loan Agreement, and SMI executed a promissory note payable to Whitney Bank in the amount of $900,000. The original maturity date of the note was extended to July 3, 2016 by an allonge dated April 4, 2016. On that same date, SMI executed a commercial security agreement, which was perfected by the filing of a UCC financing statement. This loan is sometimes referred to in the parties' briefing as "Loan 2" or "Line 2." The purpose of this loan was to "provide funds for a particular contract with Halliburton." (Rec. Doc. 50-10 at 1).

Whitney Bank contends that both loans are in default, that the amounts due under the loans are undisputed, that only the obligations expressly set forth in writing in the loan documents may be enforced, and that it did not breach any contractual obligations in its dealings with SMI. The defendants contend, however, that their failure to repay any amounts owed should be excused because Whitney Bank substantially breached the contract between them.

The defendants contend that Whitney Bank undertook the second loan – which was in the nature of a revolving line of credit – in order to finance SMI's construction of eight tanks or vessels that were to be installed in ships pursuant to a contract between SMI and Halliburton. The defendants contend that the bank was fully apprised of the terms and conditions of the contract between SMI and Halliburton and committed to continue loaning money under the line of credit until the Halliburton job was completed. The defendants contend that the bank knew that Halliburton intended to pay for the vessels only after all of them had been completed and that the project was to be completed approximately in September 2016, and Henry Schexnayder, Whitney Bank's Metro Baton Rouge market president at relevant times, confirmed in his deposition testimony that he was aware of that arrangement. (Rec. Doc. 50-5 at 23, 26). The Business Loan Agreement executed on April 3, 2015 states that the purpose of the loan is for a temporary overline to provide funds for a particular contract with Halliburton. (Rec. Doc. 50-10 at 1). The

Business Loan Agreement became effective on April 3, 2015 and was to "continue in full force and effect until such time as all of Borrower's Loans in favor of Lender have been paid in full. . . or the parties may agree in writing to terminate this Agreement." Under the agreement, "Lender has agreed to consider making Loan Advances to Borrower, from time to time, one or more times, on a revolving line of credit basis up to a maximum principal amount. . . [of] $900,000.00 or such other amounts as to which Lender may agree." The Business Loan Agreement also stated that the lender would have no obligation to make loan advances or to disburse loan proceeds if any one of four things occurred: (a) the borrower or guarantor was in default under this agreement or any other agreement with the bank; (b) the borrower or guarantor died, became incompetent, became insolvent, or filed for bankruptcy protection; (c) a materially adverse change in the borrower's or guarantor's financial condition or the value of the collateral occurred; or (d) a guarantor sought to revoke its guaranty of this or any other loan. (Rec. Doc. 50-10 at 3). Additionally, the lender could refuse to extend Loan Advances (as defined in the agreement) if (a) the maximum line of credit was exceeded; (b) the borrower failed to comply with the lender's procedure or requirements; (c) the borrower failed to provide the lender with satisfactory documentation supporting its requests; (d) the lender believed the borrower was not complying with the terms or conditions of the agreement or was

in default; or (e) the lender deemed itself insecure with regard to repayment of the loan. (Rec. Doc. 50-10 at 1).

The defendants contend that the bank substantially breached the contract on June 28, 2016, when the bank first confirmed that it would fund SMI's payroll but then, two hours before the funding was to occur, withdrew its commitment to do so, forcing Mr. Lane to use $87,000 from VS Lane & Company to cover SMI's payroll. (Rec. Doc. 50-3 at 63-68).

The defendants also contend that, on July 10, 2016, Whitney Bank dishonored a check written by SMI to Corrosion Materials, a critical vendor on the Halliburton project, after having expressly agreed to fund the check. (Rec. Doc. 50-3 at 101-104).

The defendants also contend that, thereafter, SMI approached Halliburton and secured Halliburton's agreement to pay its vendors directly and – at the suggestion of Henry Schexnayder of Whitney Bank – secured Halliburton's agreement that it would make interim payments on its contract with SMI. (Rec. Doc. 50-3 at 105-108). The defendants contend that Halliburton actually paid for the first two vessels soon after they were completed rather than waiting for all eight of the vessels to be finished. (Rec. Doc. 50-3 at 108-109).

The defendants contend that, at some point in June or July 2016, Whitney Bank employee Omer Davis devised a workout plan by which the bank would

5

continue to fund the Halliburton project through its completion and advance a sum of $270,000 over-line but the plan was never reduced to writing and the bank failed – without explanation – to implement the plan. (Rec. Doc. 50-6 at 15-16, 37-41, 54-55). At relevant times, Mr. Davis was an executive vice president and credit approver for the bank. (Rec. Doc. 50-6 at 5-6). In his deposition testimony, Mr. Davis confirmed that he approved a workout plan (Rec. Doc. 50-6 at 15-16, 37, 87) and did not know why that plan was not implemented. (Rec. Doc. 50-6 at 55).

The defendants contend that Whitney Bank merged the two loans and transferred both of them to the bank's special assets department. (Rec. Doc. 50-3 at 111-113). Mr. Davis testified that he does not know why the loans were transferred to the bank's special assets department. (Rec. Doc. 50-6 at 55). David Campbell, the commercial loan officer with whom SMI primarily dealt, testified that the transfer was Mr. Davis's decision. (Rec. Doc. 50-4 at 104). Louis Dubos, the bank's supervisor of special assets (Rec. Doc. 50-7 at 6) does not know who made the decision to transfer the loans to special assets. (Rec. Doc. 50-7 at 8). Calvin Cranfield, a team leader for the bank's special assets department (Rec. Doc. 50-8 at 6), assumes that it was a committee decision. (Rec. Doc. 50-8 at 8).

The defendants contend that, on July 21, 2016, Mr. Campbell advised Mr. Lane that there would be no further communications between Whitney Bank's Commercial Loans Department and SMI or Halliburton. (Rec. Doc. 50-3 at 113-

6

115). Mr. Campbell confirmed that he advised SMI that the commercial loan department would take no future phone calls from SMI or Halliburton even though the line of credit was still in existence. (Rec. Doc. 50-4 at 109). Halliburton then canceled its contract with SMI. (Rec. Doc. 50-3 at 115).

The defendants contend that, after the loans were transferred to the bank's special assets department and communication with SMI and Mr. Lane was discontinued, Whitney Bank and its counsel refused to provide information to SMI or Mr. Lane regarding its collection efforts. (Rec. Doc. 50-3 at 127-128, 132).

The defendants contend that certain collection efforts undertaken by Whitney Bank were inappropriate. For example, the defendants contend that Whitney Bank's counsel sent notices to SMI's customers without coordinating collection efforts with SMI, resulting in demand letters being sent to customers who did not owe money to SMI or from whom SMI had already collected in the normal course of business. (Rec. Doc. 50-2 at 115-116; Exhibit 50-3 at 253-256, 259-260).

On August 18, 2016, Whitney Bank sent a demand letter to SMI and Mr. Lane, declaring the April 2015 and the June 2015 promissory notes in default, advising of the amounts due on both loans, and demanding payment not later than August 29, 2016. (Rec. Doc. 46-2). Ultimately, SMI's customers cancelled every contract that they had with SMI. (Rec. Doc. 50-3 at 123).

The bank now seeks to be paid the sums it claims are owed under the two loans, while the defendants argue that their performance under the loan agreements should be excused because the bank substantially breached the loan agreements.

## Analysis

**A.     The Applicable Standard**

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. A fact is material if proof of its existence or nonexistence might affect the outcome of the lawsuit under the applicable governing law.[1] A genuine issue of material fact exists if a reasonable jury could render a verdict for the nonmoving party.[2]

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion and identifying those parts of the record that demonstrate the absence of genuine issues of material fact.[3] If the moving party carries its initial burden, the burden shifts to the nonmoving party to

---

[1] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009); *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).

[2] *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252); *Hamilton v. Segue Software, Inc.*, 232 F.3d at 477.

[3] *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

demonstrate the existence of a genuine issue of a material fact.[4] All facts and inferences are construed in the light most favorable to the nonmoving party.[5]

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that there is insufficient proof concerning an essential element of the nonmoving party's claim.[6] The motion should be granted if the nonmoving party cannot produce evidence to support an essential element of its claim.[7]

When both parties have submitted evidence of contradictory facts, a court is bound to draw all reasonable inferences in favor of the nonmoving party.[8] The court cannot make credibility determinations or weigh the evidence, and the nonmovant cannot meet his burden with unsubstantiated assertions, conclusory allegations, or a scintilla of evidence.[9] "When all of the summary judgment evidence presented by both parties could not lead a rational trier of fact to find for the nonmoving party,

---

[4] *Washburn v. Harvey*, 504 F.3d at 508.

[5] *Brumfield v. Hollins*, 551 F.3d at 326 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)).

[6] *Norwegian Bulk Transport A/S v. International Marine Terminals Partnership*, 520 F.3d 409, 412 (5th Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. at 325).

[7] *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).

[8] *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005).

[9] *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d at 540.

there is no genuine issue for trial and summary judgment is proper."[10] On the other hand, a genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party.[11]

**B.** **The Law to Be Applied**

This action is before the court on diversity jurisdiction. (Rec. Doc. 1 at 2-3). A federal court sitting in diversity must apply state substantive law and federal procedural law.[12] Therefore, Louisiana's substantive law must be applied in this case.[13]

**C.** **Genuine Issues of Material Fact Preclude Summary Judgment in the Bank's Favor**

Whitney Bank takes the position that its motion for summary judgment should be decided on the basis that this is a simple collection matter and that all the bank needs to establish is that loan documents were signed, the borrower defaulted on the loans, and the bank has calculated the amounts that are due under the loans, as though this were a simple case on an open account subject to the calculation of a sum certain

---

[10] *Greene v. Syngenta Crop Protection, Inc.*, 207 F.Supp.2d 537, 542 (M.D. La. 2002) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

[11] *Pylant v. Hartford Life and Accident Insurance Company*, 497 F.3d 536, 538 (5th Cir. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248).

[12] *Erie R. R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996); *Coury v. Moss*, 529 F.3d 579, 584 (5th Cir. 2008).

[13] See, e.g., *Moore v. State Farm Fire & Cas. Co.*, 556 F.3d 264, 269 (5th Cir. 2009).

10

as liquidated damages. In this case, however, the defendants have asserted affirmative defenses and have made allegations in a cross-claim that raise factual issues relevant to the bank's claims.

In response to Whitney Bank's complaint, the defendants alleged that their default under the promissory notes was caused by the bank's violation of its contractual obligations, by the bank's breach of its fiduciary duties, by the bank's negligence in dealing with the defendants and their customers, by the bank's abuse of rights, by the bank's negligent misrepresentation, by the bank's tortious interference with SMI's business, by the bank's intentional interference with SMI's contracts and working relationships with its customers, and by the bank's willful actions. (Rec. Doc. 15 at 8-9).

Under Louisiana law, contracts must be performed in good faith,[14] and an obligor in bad faith is liable for the damage that results from his failure to perform.[15] Furthermore, when one party substantially breaches a contract, the other party to the contract has a defense and an excuse for nonperformance.[16] In the more particular

---

[14] Louisiana Civil Code Article 1983.

[15] Louisiana Civil Code Article 1997.

[16] *Olympic Ins. Co. v. H. D. Harrison, Inc.*, 463 F.2d 1049, 1053 (5th Cir. 1972), cert. denied 410 U.S. 930 (1973); *LAD Services of Louisiana, L.L.C. v. Superior Derrick Services, L.L.C.*, 2013-0163 (La. App. 1 Cir. 11/7/14), 167 So.3d 746, 755, writ not considered, 2015-C-0086 (La. 04/01/15), 162 So.3d 392; *Commerce Ins. Agency, Inc. v. Hogue*, 618 So.2d 1048, 1052 (La. App. 1 Cir.), writ denied, 626 So.2d 1171 (La. 1993). See, also, Louisiana Civil Code Article 2013, which states that "[w]hen the obligor fails to perform, the obligee has a right to the judicial

context of commercial loan transactions, every contract subject to the UCC, such as the loan agreements between Whitney Bank and SMI, imposes an obligation of good faith and reasonable commercial standards of fair dealing.[17]

In *Olympic Ins. Co. v. H.D. Harrison,* the court recognized that undisputed multiple breaches of a contract between a principal and agent that "went to the very foundation of the business relationship" constituted a substantial breach that excused performance.[18] In *LAD Services of Louisiana, L.L.C. v. Superior Derrick Services, L.L.C.*,[19] the court indicated that a breach is substantial if it is an "actual cause of [in this case SMI's] failure to comply with its obligations."

Therefore, the defendants' allegation that Whitney Bank breached the contract between them, supported by the deposition testimony submitted by the defendants in opposition to the bank's motion for summary judgment, demonstrates that there are factual disputes precluding summary judgment in the bank's favor. More particularly, whether the bank breached the Business Loan Agreement by, for example, failing to fund the Halliburton project to completion, failing to fund the

---

dissolution of the contract or, according to the circumstances, to regard the contract as dissolved. In either case, the obligee may recover damages."

[17] La. R.S. 10:1-201, 10:1-304, 10:9-607.

[18] 463 F.2d. at 1054.

[19] 2013-0163 (La. App. 1 Cir. 11/17/14), 167 So.3d 746, 756, writ not considered, 2015-C-0086 (La. 04/02/15), 162 So.3d 392.

$87,000 payroll call, dishonoring the check to Corrosion Materials, or requiring the defendants to ask Halliburton to change the terms of its contract with SMI, are genuine issues of material fact that cannot be resolved at this time. Further, there is a genuine issue of material fact concerning whether the bank stopped funding the Halliburton project without at least one of the conditions for cessation of funding set forth in the Business Loan Agreement being satisfied.

Additionally, there is a genuine issue of material fact before the court concerning the amount due on the loans. The bank claims that the amount due is a sum certain that has been calculated in accordance with the bank's procedures but the defendants dispute the amount sought to be recovered by the bank on the basis that the bank has refused to share with the defendants the amount collected since the loans were transferred to the bank's special assets department. At the hearing, the bank's counsel represented that the amounts due under both loans were made known to the defendants in the default letter of August 18, 2016 (Rec. Doc. 46-2). But the amounts stated to be owed in that letter are very different from the amounts stated in the bank's memorandum in support of its motion for summary judgment as being currently due (Rec. Doc. 46-3 at 21-22). In the default letter, the principal amounts due were stated as $457,477.20 and $1,088,465.73 while the principal amounts stated to be due in the motion for summary judgment were $963,528.83 and $105,256.20. No explanation for the difference was offered in the briefing or at oral

13

argument, but this Court presumes that both numbers are lower because the defendants' accounts receivable or other collateral has been used to decrease the indebtedness. The defendants maintain, however, that there has been no communication from the bank or its counsel documenting the bank's collections efforts or the calculation of the amounts owed. Therefore, there is a genuine dispute concerning the amount owed by the defendants to the bank, which precludes summary judgment at this time.

## **Conclusion**

Having found that genuine issues of material fact exist,

IT IS ORDERED that Whitney Bank's motion for summary judgment (Rec. Doc. 46) is DENIED.

Signed at Lafayette, Louisiana, this 14th day of June 2018.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE